# Bercy *v.* Lavretta *et al.*

*Bill in Equity by Heirs, to set aside Conveyance by Ancestor,*

1. *Continuance of trustee's title; wife's statutory separate estate under deed.* Under a deed executed in 1846, by which the grantor, declaring his desire to make "a sure and permanent provision" for his wife, conveys lands and slaves to a trustee, "his heirs and assigns," in trust for the sole use and benefit of the wife during the term of her natural life; and, at the termination of said estate, "then the said lands and premises, and the said slaves and their future increase, to be held in trust by the said L." [trustee] "for the sole use and benefit of" her children by the grantor; the estate of the trustee terminates on the death of the wife, and the legal title then passes to the children who are remainder-men; and on the subsequent marriage of one of the daughters, her interest in the property is held by her as a part of her statutory separate estate.

2. *Statute of limitations; when available on demurrer.*—When a bill in chancery shows on its face that the relief prayed for is barred by the statute of limitations, the defense is available by demurrer.

3. *Same; averment of infancy.*—An averment in a bill in chancery, that the

[Bercy v. Lavretta.]

complainants' mother "was an infant under the age of twenty-one years" on a specified day, which was twelve years before the filing of the bill, being construed most strongly against the pleader, is not equivalent to an averment that she was an infant at a later day; and being thus construed, the bill shows on its face that the asserted claim is barred by the statute of limitations of ten years.

4. *Same; exception when judgment is arrested or reversed; dismissal of bill without prejudice.*—When the chancellor dismisses a bill generally, and his decree is so modified by this court, on appeal, as to order the dismissal without prejudice to the right of one of the complainants to sue again; a bill filed by the heirs of said complainant, within twelve months after such dismissal, is not within the statute (Code, § 3235) which allows a new action to be commenced within one year after the arrest or reversal of a judgment for the plaintiff, although the period prescribed as a bar has been completed since the commencement of the first action.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 12th October, 1877, by Elode Bercy and others, infants suing by their next friend, against Edward Bercy (their father), Giovanni Lavretta, and Henry Molloy; and sought to annul and set aside, so far as the rights of the complainants were affected, a deed of conveyance for a lot or parcel of land in the city of Mobile, executed by their father and mother to said Molloy and one Horgan, who afterwards sold and conveyed to said Lavretta; also, an account of the rents and profits, and general relief. The bill alleged, that the complainants were the only children and heirs-at-law of Eleanor Bercy, deceased, and said Edward Bercy, one of the defendants; that their said mother and her sister, Helen Schaffer, were the only children of Foloe Pinta and his wife, Marie Victorine Pinta, late of Mobile, both of whom died long before the filing of the bill; that the said Eleanor Bercy, complainants' mother, died on the 26th July, 1877, and their father resided in the city of New Orleans; and that the lot or tract of land now sued for was, with other property, conveyed by said Foloe Pinta, in 1846, by deed, to one La Fargue as trustee; under which deed complainants derived their asserted interest in said land, and a copy of which was made an exhibit to their bill.

The following are the material portions of this deed: "This indenture, made this the 5th day of May, in the year of our Lord one thousand, eight hundred and forty-six, between Foloe Pinta of the first part, Alexander La Fargue of the second part, trustee, and Marie Victorine Pinta, wife of the said Foloe, of the third part; *Whereas*, the said Foloe Pinta is at this time free from debt, and is willing and desirous to make some sure and permanent provision for the support of his said wife out of his estate; now this indenture *witnesseth*, that the said Foloe Pinta, for and in consideration of the premises, and for the further consideration of one dollar to

him in hand paid by the said Alexander La Fargue, at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath given, granted, bargained and sold, and by these presents *do* give, grant, bargain and sell, unto the said Alexander La Fargue, his heirs and assigns forever, all and singular the following real and personal estate, to-wit," describing the land; "also, a negro woman named Phillis, aged about twenty years, and her child Louisa, aged about eight months. *To have and to hold* the above described lots, pieces, and parcels of land and premises, with the appurtenances, and also the said slaves, with their future increase, unto him, the said Alexander La Fargue, and his heirs and assigns, free from the claim or claims of all and every person or persons whomsoever; *in trust*, nevertheless, and upon this express condition : that the said Alexander La Fargue shall have (?) the said lands and premises, and the said slaves and their future increase, for the sole use and benefit of my said wife, Marie Victorine Pinta, during the term of her natural life ; allowing to my said wife the use and occupation of the said lands and premises, and the use and hire of the said slaves and their future increase, to be possessed and managed as to her may seem proper, during the term aforesaid ; and at the termination of said estate of my said wife, then the said land and premises, and the said slaves and their future increase, to be held in trust by the said Alexander La Fargue, for the sole use and benefit of such child or children as my said wife, Marie Victorine, may have by me, the said Foloe Pinta, and to their heirs forever. Should my said wife, however, during her life desire that the said lands and premises above described, or any part thereof, or the said slaves and their future increase, or any or all of them, be disposed of for other property or funds, then the said Alexander La Fargue, upon the written request of the said Marie Victorine Pinta (my said wife), shall be fully authorized and empowered to make sale of said lands and premises, and the said slaves with their future increase, to such person or persons, and upon such terms, as my said wife in writing may request ; and such property or funds, so acquired by the sale of said premises, shall be held in like manner, and for the same uses and purposes, as the said lots and slaves *is* now conveyed and desired to be held. And the said Alexander La Fargue, for himself and his heirs, *do* hereby accept the trust reposed in him by these presents, and engages to fulfill the same according to the true intent and meaning hereof. In witness whereof," &c.

The bill further alleged that, on the 13th July, 1862,. the mother and father of the complainants conveyed the said

lands by deed to said Henry Molloy and Paul Horgan, for the sum of $3,000 in Confederate treasury-notes; "that, at the time of signing said deed, their mother, said Eleanor, was an infant under the age of twenty-one years;" that Molloy and Horgan sold and conveyed the said lands to the defendant Lavretta, by deed dated the 13th February, 1873; that Lavretta was in possession at the filing of the bill, and receiving the rents and profits; that said Horgan was dead, and that no administration had been granted on his estate. The bill contained, also, the following allegations: (7.) "That the said Eleanor, mother of complainants, together with her sister, Helen Schaffer, whom she was advised it was necessary to join with her, did, on the 22d day of January, 1874, file a bill in this honorable court, against the said Molloy and Horgan, and Giovanni Lavretta and others; in which they prayed that their respective deeds, made by them to said Molloy and Horgan, should be declared void, and that the same be cancelled, and for such other and further relief as said court should decree proper under the circumstances of the case: That answers to said bill were duly filed by said Molloy and Horgan, and said Lavretta and other defendants thereto; and that upon the hearing of the said cause, the same was dismissed by the decree of this honorable court: That an appeal was taken by the said Helen Schaffer and Eleanor Bercy in said suit, from the decree of this honorable court, to the Supreme Court of the State of Alabama: That the same was argued at the December term, 1876, of the said Supreme Court; and at the June term thereof, 1877, a decree was rendered by the said Supreme Court, modifying the decree of this honorable court, by dismissing said bill without prejudice to the mother of complainants, said Eleanor Bercy, to sue again: That the said cause was, at the June term, 1877, of this honorable court, dismissed therefrom, in strict conformity with the decree of the said Supreme Court."

"(9.) Complainants further show, that said deeds from their parents, Edward and Eleanor Bercy, to said Molloy and Horgan, and from said Molloy and Horgan to said Lavretta, form a cloud upon their title to their undivided half interest in said lot of land, which a court of equity alone has power to remove; and that, unless said deeds are cancelled, or declared null and void, the undivided half interest belonging to complainants will be of no value.

"(10.) Complainants further say, that they are informed, and upon this information charge, that the sale to said Molloy and Horgan was for a very inconsiderable price, paid in Confederate treasury-notes; that their said mother did not

sign said deed freely, and of her own accord, but was induced to do so through the fear and threats of her said husband; that she never received any of the purchase-money, or any of the benefits thereof, nor have complainants ever received anything from said sale; that they are entirely destitute of property or means, and their said father is insolvent; that their said mother never did in her life-time ratify, affirm, or give assent to said deed, after she came of age; that her rights in the said premises, and the right to sue therefor after she came of age, was unknown to her, and was concealed from her by her said husband, who opposed any interference on her part; that after she ascertained that she probably had a right of action, her said husband refused to let a suit be brought, alleging that he was trustee under the Code of Alabama, and had the right to control said property; and their said mother, being an uneducated and uninformed woman, and under the influence of her said husband, (?) until the filing of her said bill as before alleged: That immediately after the dismissal of said suit by the Supreme Court, she directed her attorney to bring another suit, which was done by her attorney; but it appeared that she died a few days before said last bill was filed."

"Complainants insist that, under the facts stated, the said Edward Bercy forfeited his interest in said land by his conduct and sale, and did not become entitled to a life-estate under his wife at her death, nor by the laws of this State; and that the said Lavretta cannot avail himself of the estate of the said husband, and that complainants are entitled to the immediate possession of the said lot on the setting aside of said deeds. But, if complainants should be wrong in this, and are not entitled to an account and possession until after the death of their said father, then they allege that, by delay in this behalf, their right to the remainder would be lost or impaired by the death of witnesses and the lapse of time, and the outstanding deed of their said mother might ripen into a good title, or at least continue (?) a cloud on complainants' title. Wherefore," on the setting aside of the deed, they prayed further relief in the alternative, as the court might determine in reference to the rights of their father.

The defendants Lavretta and Molloy filed a joint demurrer, assigning the following (with other) causes of demurrer: 1st, that the cause of action set forth in the bill is barred by the statute of limitations of ten years; 2d, that the bill shows on its face that Lavretta, and Molloy and Horgan under whom he claims, have had adverse possession of the premises sued for, for more than ten years next preceding the filing of the

bill. The chancellor sustained the demurrer on these grounds, and dismissed the bill; and his decree is now assigned as error.

JOHN T. TAYLOR, ST. PAUL & LABUZAN, and Thos. E. MC-CARTNEY, for appellants.—The bill does not, on its face, show that the complainants are barred by the statute of limitations; and hence it was not demurrable on that ground. It only avers that their mother was under twenty-one years of age, in 1862, when she signed the deed to Molloy and Horgan, but does not state her age at that time, nor the time when she attained majority, nor any other fact from which her age may be inferred. As to all these matters, the court must indulge in conjectures, in order to hold the bill demurrable. But the statute did not run against Mrs. Bercy in the prosecution of this claim, because she was under the double disability of infancy and coverture when her rights accrued, and her coverture did not terminate until her death in July, 1877. This cannot be disputed, if the deed of her father creates in her an equitable separate estate; and that such is the operation and effect of the deed, is shown by numerous decisions construing similar deeds.—18 Ala. 84; 19 Ala. 146, 373; 20 Ala. 721; 26 Ala. 213, 332; 38 Ala. 115; 39 Ala. 514; 43 Ala. 338. But, even if Mrs. Bercy held the property as her statutory separate estate, her claim was not barred when she filed her former bill jointly with her sister; and that bill was dismissed without prejudice to her right to sue again. Such dismissal would be without effect or meaning, unless it is construed to give the party the same standing in court that she had when her bill was dismissed. To dismiss without prejudice, when the claim is already barred by the statute, is nugatory, unless it secures the right to sue again notwithstanding the bar. When the first bill was thus dismissed, the parties stood exactly as they did when it was filed, notwithstanding the lapse of the intervening time; and the new bill takes the place of the old, without the misjoinder which was fatal to it. At law, where the plaintiff recovers a judgment, and his suit is dismissed, or the judgment arrested or reversed on error, he is allowed one year to bring a new suit.—Code, § 3235. By analogy to this statute, a dismissal without prejudice should be allowed the same effect. It must be remembered, too, that Mrs. Bercy was under the disabilities of infancy and coverture, and under the forcible control of her husband, who, as her trustee, had the right to the use and possession of her property, and who fraudulently deceived and imposed on her; and the defendant now seeks to avail himself of this fraud and imposition

of the husband, under the plea of the statute of limitations.

BOYLES & OVERALL, *contra*, cited *Schaffer v. Lavretta*, 57 Ala. 14; *Molton v. Henderson*, at the last term; *Fleming v. Gilmer*, 35 Ala. 62; *Daniel v. Day*, 51 Ala. 431.

STONE, J.—The deed of Foloe Pinta, of date May 5th, 1846, secured to his wife, Marie Victorine Pinta, an equitable separate estate in the property therein conveyed, for and during the term of her natural life, remainder to her children begotten by the said Foloe. Eleanor Bercy, mother of the complainants in this suit, was one of the children of that marriage. The deed contains no words of exclusion, as to the interests which the children took as remainder-men. When Eleanor' intermarried with Mr. Bercy, her interest in the property in controversy in this suit became her statutory separate estate, subject to all the rules which govern that species of estate. In 1862, Bercy and wife conveyed the lands in controversy to Molloy and Horgan, by deed of bargain and sale, who subsequently conveyed to Lavretta, the present adverse claimant. In the case of *Schaffer v. Lavretta*, 57 Ala. 14, construing the deed of Foloe Pinta, under which the present complainants assert title, we held, that the title of the trustee named in the deed terminated at the death of Mrs. Pinta, and that Mrs. Bercy took, freed from the trust imposed by the deed. We have no inclination to disturb, or re-examine that ruling. The title of Mrs. Bercy, then, became a naked statutory separate estate, of which her husband was the trustee.

The ground on which complainants seek to avoid the deed of Bercy and wife to Molloy and Horgan, made in 1862, is that Mrs. Bercy was then an infant under twenty-one years of age. Such is the averment of the bill; and it is not shown when she attained the age of twenty-one years. The entire averment is, "that at the time of signing said deed, their mother, said Eleanor, was an infant under the age of twenty-one years." Mrs. Bercy died in July, 1877, leaving her husband surviving her; and the present bill was filed in October, 1877. Molloy and Horgan, and Lavretta under them, have held adversely, and under claim of title, ever since the purchase of the former, in July, 1862. It is assigned as ground of demurrer to the bill, that it shows on its face that Lavretta, and those whose title he has, have had adverse possession of the property sued for, for more than ten years before the bringing of this suit. The chancellor sustained this ground of demurrer, and appellants assign this ruling as error. Complainants contend, that, inasmuch as the bill

[Bercy v. Lavretta.]

does not clearly show that Mrs. Bercy had been of lawful age of twenty-one years, for ten years before this suit was brought, the defendants should have been put to their plea of the statute of limitations, when all the facts could have been brought out in evidence.

If it be shown by the bill that the relief prayed for is barred by the statute of limitations, the defense is available by demurrer.—1 Brick. Dig. 699, § 859. The statutes of limitation, in this State, are expressly made applicable to suits in chancery; and the exception in favor of married women, allowing them a time within which to sue, after the removal of their disabilities, does not extend to, or enlarge the time in which she may sue, in respect to her statutory separate estate.—Code of 1876, §§ 3758, 3759, 3225, 3236. The inquiry, then, is, does the bill show the present claim is barred by the limitation of ten years?

The established rule is, that pleadings must be construed most strongly against the pleader.—1 Brick. Dig. 701, §§ 903, 895, 896. The averment of this bill, as we have shown, is, that Eleanor, mother of complainants, was an infant under twenty-one years of age, when she executed the conveyance. Age of a person is not of the class of facts which, being proved to have existed at a given time, is presumed to continue in *statu quo*, until the contrary is shown. It is not a fact in its nature continuous, but is ever changing with the flight of time.—1 Brick. Dig. 806, §§ 32 *et seq*. The averment that Mrs. Bercy was an infant under twenty-one years of age in July, 1862, is not an averment that she was an infant at any later period. Such an averment, standing alone and unaided, rather negatives the idea that she remained an infant at a later date.

Another view: The general rule is, that when lands are adversely held and occupied for ten years, all persons, even the rightful owner, are barred the right of entry. There is an exception in favor of infants, &c.; but it is only an exception to a rule. Whoever relies on the exception, to relieve him from the operation of the general rule, must state facts which show he is within the exception. Failing to do so, the courts presume the case falls within the general rule. The statutes of limitation were suspended in this State, from January 11th, 1861, to September 21st, 1865. On the day last named, the statute commenced running against Mrs. Bercy. The present suit was commenced more than twelve years afterwards. The chancellor did not err in sustaining the demurrer to complainants' bill. — *Molton v. Henderson*, at the last term.

It is claimed for appellants, that their case is within the

influence of section 3235 of the Code of 1876, and therefore the statute does not bar their suit. The averments of the present bill, which are supposed to bring this case within the influence of that section, are, "That the said Eleanor, mother of complainants, together with her sister, Helen Schaffer, whom she was advised it was necessary to join with her, did on the 22d day of January, 1874, file a bill in this honorable court, against the said Molloy and Horgan, and Giovanni Lavretta and others, in which they prayed that their respective deeds, made by them to said Molloy and Horgan, should be declared void, and that the same be cancelled; and for such other and further relief as said court should deem proper under the circumstances of the case: That answers to said bill were duly filed by said Molloy and Horgan, and said Lavretta and other defendants thereto; and that upon the hearing of said cause, the same was dismissed by decree of this honorable court: That an appeal was taken by the said Helen Schaffer and Eleanor Bercy in said suit, from the decree of this honorable court, to the Supreme Court of the State of Alabama: That the same was argued at the December term, 1876, of the said Supreme Court; and at the June term, 1877, thereof, a decree was rendered, modifying the decree of this honorable court, by dismissing said bill without prejudice to the mother of complainants, said Eleanor Bercy, to sue again: That the said cause was, at the June term, 1877, of this honorable court, dismissed therefrom, in strict conformity with the decree of the said Supreme Court." It is manifest that this averment falls very far short of making a case within section 3235 of the Code. Not to mention its failure to show the ground on which the bill first filed was dismissed out of the Chancery Court, and out of this court, it does not present a case of 'judgment rendered for the plaintiff,' and such judgment 'arrested, or reversed on appeal.'

We consider it unnecessary to notice any other question raised in this cause.

The decree of the chancellor is affirmed.