274 So.2d 640

In re Dorman MUSGROVE, Jr., et al.

v.

UNITED STATES PIPE AND
FOUNDRY CO., a corp.

Ex parte Dorman Musgrove, Jr., et al.

6 Div. 887, 6 Div. 901.

Supreme Court of Alabama.

Sept. 7, 1972.

Cooper, Mitch & Crawford, Birmingham, George B. Azar, Montgomery, for petitioners.

H. Gerald Reynolds, Charles W. Matthews, Birmingham, for respondent.

PER CURIAM.

The petitioners in brief state that this case "now stands before this Court in a unique and awkward posture". Indeed it does, having reached this court in the following manner:

Pending in the Circuit Court for the 10th Judicial Circuit is a case in Equity wherein U. S. Pipe is plaintiff and Local 7918, United Mine Workers, et al., are respondents.

On September 8, 1970, Judge Barber of that court entered an order pertaining to the right of the respondents in that case to strike and picket U. S. Pipe.

On June 15, 1971, the individual respondents named in that case allegedly violated the order of the court and were cited by the court for contempt. These parties after hearing were found guilty of contempt and sentenced by the judge to 5 days imprisonment to commence on the day of the hearing—July 12, 1971.

Those respondents, these petitioners, on the same day petitioned the Court of Criminal Appeals for a writ of certiorari asking that court to review the contempt order. The Court of Criminal Appeals granted the writ of certiorari and entered an order staying the sentence imposed by the trial court pending a review by the Court of Criminal Appeals. Two days later, on July 14th, 1971, application for rehearing was filed by U. S. Pipe in the Court of Criminal Appeals, which application questioned the jurisdiction of the Court of Criminal Appeals to entertain the petition for writ of certiorari. On July 21, 1971, United States Pipe and Foundry Co. v. Local 7918 United Mine Workers of America, 274 So. 2d 637, the Court of Criminal Appeals entered an order granting the application for rehearing and dismissed the petition for writ of certiorari. The next day the petitioners filed an application for rehearing with the Court of Criminal Appeals and the application was denied. The case is here on petition for writ of certiorari to the Court of Criminal Appeals from the last decision rendered in that court.

To compound the procedural confusion involved, since the petitioners were placed in jail on July 21, 1971, following the or-

der entered by the Court of Criminal Appeals dismissing the petition for writ of certiorari, the petitioners filed in this court on the same day they filed their petition for writ of certiorari to the Court of Criminal Appeals, a petition for writ of habeas corpus, having first filed such a writ with the trial court which was denied. This court granted the writ of habeas corpus pending disposition of the matter.

The petition for writ of habeas corpus and the petition for writ of certiorari to the Court of Criminal Appeals have been, on motion, consolidated here. Additionally, the petitioners have asked that the petition for writ of certiorari be considered an original petition to the trial court if the only question involved here requires such treatment. That question is: Did the Court of Criminal Appeals have jurisdiction to entertain a petition for writ of certiorari to "review" a contempt citation issued in a case over which it had no appellate jurisdiction of the underlying case.

All concerned agree that the proper method to review a contempt order is by certiorari if the party is not in jail, and by habeas corpus if he is. All here agree that the nature of the contempt is "criminal" in the delineation of contempt into "civil" and "criminal" as spelled out in our cases. The only disagreement is where this review should take place.

Petitioners, obviously not without some thoughtful consideration, concluded that the petition should be brought in the Court of Criminal Appeals. That court initially agreed but reached a contrary decision on rehearing. The determining factor depends upon a construction of the statutes defining the jurisdiction of the Court of Criminal Appeals, now found at Title 13, § 111(4) et seq. Those statutes are as follows:

"§ 111(4). Each of the said courts of appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Each court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction; * * *."

§ 111(6). The judges of said courts shall each have authority to issue writs of certiorari and supersedeas to all inferior courts, and writs of injunction, subject to the limitations prescribed by law."

Do these statutes mean that the Court of Criminal Appeals has jurisdiction in a "criminal" contempt case only if it has appellate jurisdiction over the matter out of which the contempt case arose? There are many cases in the books which state that a contempt proceeding is a separate proceeding and of course, it is. But, the Court of Criminal Appeals decided that notwithstanding that the contempt proceeding was separate, its jurisdiction to entertain a petition for writ of certiorari was dependent upon its having appellate jurisdiction of the underlying matter, and dismissed the petition without reviewing the question of whether or not the petitioners were guilty of contempt. As the matter now stands, these petitioners have not had that question reviewed anywhere, in any court. They are, of course, entitled to review; the only question is where.

After carefully studying the above statutes, and the one which preceded them creating in 1911 the Court of Appeals of Alabama, we are clear to the conclusion that the disposition of this matter is controlled by decision of the original Court of Appeals in Robertson v. State, 20 Ala.App. 514, 104 So. 561.

In *Robertson* a contempt matter arising out of an equity case was sought to be reviewed in the Court of Appeals. That court at that time had no appellate review over equity matters. The language of the statute creating that court has been carried

over precisely in the present statute, i.e., " 'It shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has final appellate jurisdiction; * * *.' " (Code 1923, § 7312). In holding that it had jurisdiction to review a citation for contempt arising out of a divorce proceeding via petition for writ of habeas corpus, that court said:

"A contempt proceeding raises an issue outside of the pending cause. While in some cases, it may, in a sense, be collateral to the main cause, it is not a part of that cause. It is a separate, independent proceeding, governed by well-established rules of procedure, and has no proper place in the record of the main cause. * * *.

\* \* \* \* \* \*

"We therefore conclude that a proceeding for contempt to punish a respondent for failure to comply with a decree providing for the payment of alimony is sui generis, collateral to be independent of, the cause in which the contempt arises, * * *."

The Court of Appeals in *Robertson* went on to hold that it had jurisdiction to review the contempt matter notwithstanding the fact that it had no appellate jurisdiction over the matter out of which the contempt arose. In construing the statute, the court said:

"While the statute investing this court with original jurisdiction in habeas corpus is not as clear as it might have been, we are of the opinion that a careful reading of it does not disclose a legislative intent to circumscribe the jurisdiction there conferred. The statute reads that 'this court shall have authority to issue writs of habeas corpus.' We do not consider that authority to be limited to such cases 'as are necessary to give this court general superintendence and control of jurisdiction inferior to it, and in matters over which it has final appellate jurisdiction.' "

Answering the same argument made in the case before us, the court noted:

"The language of the statute conferring jurisdiction on this court to issue writs of habeas corpus is identical with the language of section 140 of the Constitution conferring original jurisdiction on the Supreme Court of Alabama in such cases, with the exception of the phrase 'and in matters over which it has final appellate jurisdiction.' We do not understand that this additional phrase limits this court in habeas corpus matters to cases over which it has final appellate jurisdiction. It would be remarkably anomalous for this court to hold that the Legislature intended that it should have authority to issue the writ in some cases and that it should not have authority to issue the writ in other cases, depending upon what side of the docket the conviction for contempt was entered."

▓▓ Clearly, then, the *Robertson* case presented the exact same question which is before us here. The Court of Criminal Appeals recognized that, but was of the opinion that it need not follow that decision since it had not been reviewed in this court. We think the contrary. The legislature has used the exact same language construed by the Court of Appeals in *Robertson* when it adopted Title 13, § 111(4). A long line of cases hold that where the legislature re-enacts a statute or uses language in a new statute which has been previously construed by the judiciary, the construction given in a prior decision must be accepted as part of the same. Lindsey Lumber & Export Co. v. Deas, 230 Ala. 447, 161 So. 473; Peoples Auto Co. v. State, 23 Ala.App. 7, 121 So. 907, cert. den. 219 Ala. 280, 121 So. 908; Cook v. State, 32 Ala.App. 54, 21 So.2d 446; Hamm v. Harrigan, 278 Ala. 372, 178 So.2d 529.

**160**

The petition for writ of certiorari to the Court of Criminal Appeals having already been granted, the judgment of that court is reversed and the cause is remanded.

The proceedings on the writ of habeas corpus heretofore issued in this cause by this court and the return to said writ heretofore made by the Sheriff of Jefferson County are transferred to the Court of Criminal Appeals.

Reversed and remanded.

MERRILL, COLEMAN, HARWOOD, BLOODWORTH, McCALL and SOMERVILLE, JJ., concur.

HEFLIN, C. J., and MADDOX, J., dissent.

MADDOX, Justice (dissenting).

I must respectfully dissent. The case of Robertson v. State, 20 Ala.App. 514, 104 So. 561 (1924), relied on by the majority was not reviewed by this Court.

I believe the whole purpose of granting the Court of Criminal Appeals authority to issue remedial writs was for the purpose of giving to that court a general superintendence and control of jurisdiction inferior to it. The Court of Criminal Appeals only has appellate jurisdiction in criminal cases. I think the statute [Tit. 13, § 111(4)] limits the Court of Criminal Appeals to the issuance of remedial writs in those matters over *which it has exclusive jurisdiction.*

I believe that the *Robertson* case was incorrectly decided. This Court has jurisdiction to issue writs to inferior jurisdictions including the Courts of Appeals. Section 140, Constitution of Alabama, 1901. In my opinion, the Courts of Appeals should be and are limited to issuing extraordinary writs in those cases over which they have exclusive appellate jurisdiction.

HEFLIN, C. J., concurs.